# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| GENE READER LLC | | |
| Plaintiff, | | Civil Action No. 2:15-cv-01049 |
| v. | | |
| AGILENT TECHNOLOGIES, INC. | | **JURY TRIAL DEMANDED** |
| Defendant. | | |

## DEFENDANT AGILENT TECHNOLOGIES, INC.'S
## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Agilent Technologies, Inc. ("Agilent") submits its Answer, Affirmative Defenses, and Counterclaims to Plaintiff Gene Reader LLC's ("Gene Reader") Complaint:

### THE PARTIES[1]

1.      Agilent lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 and therefore denies same.

2.      Agilent admits that it is a Delaware corporation with a place of business located at 5301 Stevens Creek Boulevard, Santa Clara, California 95051.

3.      Agilent admits that it has registered with the Texas Secretary of State to conduct business in Texas.

---

[1]  For ease of reference, Agilent incorporates the outline headings used in the Complaint. To the extent that such headings make factual allegations, Agilent does not adopt or admit such statements and instead denies them.

## JURISDICTION AND VENUE

4.     Agilent admits that the Complaint purports to bring a suit under the Patent Act, but Agilent denies the legal sufficiency of Gene Reader's claims and allegations and denies that Gene Reader has any viable claim thereunder.

5.     Agilent admits that this Court has jurisdiction over the subject matter under 28 U.S.C. §§ 1331 and 1338.

6.     Denied.

7.     Agilent admits that venue is proper under 28 U.S.C. § 1391(b)(3) but denies that venue in this District properly serves the convenience of the witnesses, parties and the interests of justice.

## THE PATENTS-IN-SUIT

8.     Agilent admits that United States Patent No. 6,545,758 ("the '758 patent"), lists an issuance date of April 8, 2003, states as its title "Microarray Detector And Synthesizer," and that Exhibit A to the Complaint purports to be a copy of the '758 patent.  Agilent denies that the '758 patent was duly and legally issued.

9.     Agilent admits that United States Patent No. 6,567,163 ("the '163 patent"), lists an issuance date of May 20, 2003, states as its title "Microarray Detector And Synthesizer," and that Exhibit B to the Complaint purports to be a copy of the '163 patent.  Agilent denies that the '163 patent was duly and legally issued.

10.     Agilent lacks information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 and therefore denies same.

## COUNT I – INFRINGEMENT OF U.S. PATENT NO. 6,545,758

11.     Agilent repeats its responses to paragraphs 1 through 10 as if fully set forth herein.

12.     Denied.

13.     Denied.

14.     Denied.

## COUNT II – INFRINGEMENT OF U.S. PATENT NO. 6,567,163

15.     Agilent repeats its responses to paragraphs 1 through 14 as if fully set forth herein.

16.     Denied.

17.     Denied.

## JURY TRIAL DEMAND

This sentence contains a demand for jury trial to which no response is required.

## PRAYER FOR RELIEF

Agilent denies that Gene Reader is entitled to any of the relief sought in its prayer for relief.

## DEFENSES

Subject to its responses above, and upon information and belief, Agilent alleges and asserts the following defenses in response to the allegations of the Complaint.  Regardless of how such defenses are listed herein, Agilent undertakes the burden of proof only as to those defenses that are deemed affirmative defenses as a matter of law.  In addition to the affirmative defenses described below, Agilent specifically reserves all rights to allege additional affirmative

defenses pursuant to any docket control order or that becomes known through the course of this action.

## First Affirmative Defense

1.     The First Amended Complaint fails to state a claim upon which relief can be granted.

## Second Affirmative Defense

2.     The claims of U.S. Patent Nos. 6,545,758 and/or 6,567,163 (collectively the "Patents-in-Suit") are invalid and/or unenforceable under one or more provisions of Title 35, United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## Third Affirmative Defense

3.     Agilent's actions with respect to the use, sale or offer for sale of services or products or any other accused activity do not, whether literally or under the doctrine of equivalents, directly, jointly, or indirectly infringe, contribute to the infringement, or induce the infringement of any properly construed, valid and/or enforceable claims of the Patents-in-Suit.

## Fourth Affirmative Defense

4.     By reason of statements and claim amendments made by or on behalf of the applicants during the prosecution of the application that led to the issuance of the Patents-in-Suit, Gene Reader may be estopped from asserting a scope for the asserted claims of the Patents-in-Suit that would cover Agilent's allegedly infringing systems and methods.

## Fifth Affirmative Defense

5.     As and for a separate affirmative defense, Agilent alleges on information and belief that any claim for damages for patent infringement by Gene Reader is limited by 35

U.S.C. § 287 to only those damages occurring after proper and sufficient notice of infringement of the Patents-in-Suit to Agilent.

## Sixth Affirmative Defense

6.      Gene Reader's claims are barred by equitable doctrines including the doctrine of laches, waiver, and estoppel.

## DEFENDANT AGILENT'S COUNTERCLAIMS

### THE PARTIES

1.       Based on assertions by Gene Reader, Gene Reader has a principal place of business located in Plano, Texas.

2.       Based on assertions by Gene Reader, Gene Reader has "all substantial rights" and interest in United States Patent Nos.6,545,758 and/or 6,567,163 (collectively the "Patents-in-Suit").

### JURISDICTION AND VENUE

3.       This Court has subject matter over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201.

4.       Gene Reader is subject to the personal jurisdiction of this Court by virtue of the Complaint Gene Reader filed in this Court.

5.       The minimum requisites for venue under 35 U.S.C. § 1391 exist in this district, but venue is more properly established in a district that would better serve the convenience of the witnesses and parties and the interests of justice.

### COUNTERCLAIM COUNT I (Invalidity of U.S. Patent No. 6,545,758)

6.       Agilent realleges and incorporates by reference the allegations in paragraphs 1-5 above.

7.       Gene Reader has asserted that Agilent infringes the '758 patent.

8.       An actual controversy exists between Gene Reader and Agilent regarding the validity of the '758 patent.

9.       All claims of the '758 patent are invalid for failing to meet one or more conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

10.     At a minimum, and by way of example, all claims of the '758 patent are invalid under 35 U.S.C. § 102 in view of the HP G2500A GeneArray Scanner user manual (or the HP G2500A GeneArray Scanner device itself, including its existence, use, and/or sale before the filing date of the '758 patent) (collectively, "GeneArray") and/or U.S. Patent No. 6,295,153 ("Garner") and invalid as obvious over U.S. Patent No. 5,563,398 ("Sampsell") in view of GeneArray and/or Garner.  True and correct copies of the HP G2500A GeneArray Scanner user manual, Garner, and Sampsell are attached hereto as Exhibits A, B, and C respectively.

### COUNTERCLAIM COUNT II (Invalidity of U.S. Patent No. 6,567,163)

11.     Agilent realleges and incorporates by reference the allegations in paragraphs 1-10 above.

12.     Gene Reader has asserted that Agilent infringes the '163 patent.

13.     An actual controversy exists between Gene Reader and Agilent regarding the validity of the '163 patent.

14.     All claims of the '163 patent are invalid for failing to meet one or more conditions for patentability set forth in 35 U.S.C. §§ 101, 102, 103, and/or 112.

15.     At a minimum, and by way of example, all claims of the '163 patent are invalid under 35 U.S.C. § 102 in view of GeneArray and/or Garner and invalid as obvious over Sampsell in view of GeneArray and/or Garner.

### COUNTERCLAIM COUNT III (Non-infringement of U.S. Patent No. 6,545,758)

16.     Agilent realleges and incorporates by reference the allegations in paragraphs 1-15 above.

17.     Gene Reader has alleged that Agilent infringes the '758 patent.

18. An actual controversy exists between Gene Reader and Agilent regarding infringement of the '758 patent.

19. All claims of the '758 patent rely on independent claims containing a "spatial light modulator" limitation.

20. The '758 patent discloses that "[s]ince the spatial light modulator is a random access (non-scanning) device, individual probe sites or combinations of probe sites can be analyzed in any order." '758 patent at 39:1-4.

21. The face of the '758 patent lists Perry Sandstrom as its inventor.

22. In the Winter 2002 edition of the University of Wisconsin-Madison alumni magazine, *Perspective,* Mr. Sandstrom stated as follows:

> Sandstrom classifies his invention, which contains no moving parts, as a reader rather than a scanner. "It directly produces values for selectively interrogated probe sites without the need to first create a scanned image of the entire DNA," he says. "That's valuable in a number of ways. But most important is the fact that you can selectively read any probe site in any order. Current technology can't do that. It means there is no need to read the whole chip if only a few sites are being evaluated. This is a big time saver and has significant implications for noise reduction during analysis of a chip-based assay."

*See* http://www.engr.wisc.edu/alumni/perspective/28.2/periscope.html (also attached as Exhibit D.)

23. In a newsletter "for alumni and friends of the UWMadison Department of Electrical & Computer Engineering," Mr. Sandstrom identically described his invention. *See* http://www.engr.wisc.edu/ece/newsletter/2001-2002_fallwinter/sandstrom.html (also attached as Exhibit E.)

24. Gene Reader has alleged that "the SureScan Microarray Scanner" is "covered by one or more claims of the '758 patent." Compl. ¶ 12.

25. Gene Reader relies on a copy of a "SureScan User Manual" available at http://www.chem.agilent.com/library/usermanuals/public/g4900-90000_surescan_user.pdf in support of its allegations. Compl. ¶ 13.

26. In contrast to Mr. Sandstrom's prior statements, the SureScan Microarray Scanner is a scanner (not a reader) which only outputs scanned images of microarray slides. *See* SureScan User Manual at 41 ("The output folder is where the scanned image files for a slide are saved. By default, the output folder is D:\ScanData.").

27. In contrast to Mr. Sandstrom's prior statements, the SureScan Microarray Scanner contains moving parts. *See id.* at 17-18 (noting "rapid scanning of the laser excitation across the microarray").

28. In contrast to the '758 patent and Mr. Sandstrom's prior statements, the SureScan Microarray Scanner is not capable of analyzing individual probe sites or combinations of probe sites in any order. *See generally id.* (nothing in manual directed towards this functionality).

29. For at least the above reasons, Agilent has not infringed and does not infringe any valid, enforceable claim of the '758 patent literally, directly, jointly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

**COUNTERCLAIM COUNT IV (Non-infringement of U.S. Patent No. 6,567,163)**

30. Agilent realleges and incorporates by reference the allegations in paragraphs 1-29 above.

31. Gene Reader has alleged that Agilent infringes the '163 patent.

32. An actual controversy exists between Gene Reader and Agilent regarding infringement of the '163 patent.

33.     All claims of the '163 patent rely on independent claims containing a "spatial light modulator" limitation.

34.     The '163 patent discloses that "[s]ince the spatial light modulator is a random access (non-scanning) device, individual probe sites or combinations of probe sites can be analyzed in any order." '163 patent at 38:49-52.

35.     The face of the '163 patent lists Perry Sandstrom as its inventor.

36.     In the Winter 2002 edition of the University of Wisconsin-Madison alumni magazine, *Perspective,* Mr. Sandstrom stated as follows:

> Sandstrom classifies his invention, which contains no moving parts, as a reader rather than a scanner. "It directly produces values for selectively interrogated probe sites without the need to first create a scanned image of the entire DNA," he says. "That's valuable in a number of ways. But most important is the fact that you can selectively read any probe site in any order. Current technology can't do that. It means there is no need to read the whole chip if only a few sites are being evaluated. This is a big time saver and has significant implications for noise reduction during analysis of a chip-based assay."

*See* http://www.engr.wisc.edu/alumni/perspective/28.2/periscope.html (also attached as Exhibit D.)

37.     In a newsletter "for alumni and friends of the UWMadison Department of Electrical & Computer Engineering," Mr. Sandstrom identically described his invention. *See* http://www.engr.wisc.edu/ece/newsletter/20012002_fallwinter/sandstrom.html (also attached as Exhibit E.)

38.     Gene Reader has alleged that "the SureScan Microarray Scanner" is "covered by one or more claims of the '163 patent." Compl. ¶ 16.

39.     In contrast to Mr. Sandstrom's prior statements, the SureScan Microarray Scanner is a scanner (not a reader) which only outputs scanned images of microarray slides. *See*

SureScan User Manual at 41 ("The output folder is where the scanned image files for a slide are saved. By default, the output folder is D:\ScanData.").

40.　　In contrast to Mr. Sandstrom's prior statements, the SureScan Microarray Scanner contains moving parts. *See id.* at 17-18 (noting "rapid scanning of the laser excitation across the microarray").

41.　　In contrast to the '163 patent and Mr. Sandstrom's prior statements, the SureScan Microarray Scanner is not capable of analyzing individual probe sites or combinations of probe sites in any order. *See generally id.* (nothing in manual directed towards this functionality).

42.　　For at least the above reasons, Agilent has not infringed and does not infringe any valid, enforceable claim of the '163 patent literally, directly, jointly, contributorily, by way of inducement, and/or under the doctrine of equivalents.

## JURY DEMAND

In accordance with Fed. R. Civ. P. 38(b), Agilent demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Agilent prays that this Court enter judgment:

A.　　Dismissing the Complaint with prejudice and denying each and every prayer for relief contained therein;

B.　　Declaring that none of the claims of the Patents-in-Suit are directly, jointly, or indirectly infringed by the use, sale or offer for sale of any of Agilent's services or products or any other activity attributable to Agilent, either literally or under the doctrine of equivalents;

C.　　Declaring that the claims of the Patents-in-Suit are invalid;

D.     Declaring that this case is "exceptional" within the meaning of 35 U.S.C. § 285, and that all costs and expenses of this action, including reasonable attorneys' fees, be awarded to Agilent;

E.     Declaring that Gene Reader is not entitled to any injunctive relief against Agilent; and

F.     Granting Agilent such further relief as this Court may deem necessary, just or proper.

Dated:  August 12, 2015                    Respectfully submitted,

                                           /s/   Mark N. Reiter
                                           Mark N. Reiter, Texas Bar No. 16759900
                                           GIBSON, DUNN & CRUTCHER LLP
                                           2100 McKinney Ave., Suite 1100
                                           Dallas, Texas 75201
                                           Telephone: (212) 351-4000
                                           mreiter@gibsondunn.com

                                           *Attorney for Defendant-Counterclaim Plaintiff*
                                           *Agilent Technologies, Inc.*

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this document was served on all counsel who have consented to electronic service on August 12, 2015.

                                           /s/  Mark N. Reiter
                                           Mark N. Reiter